**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

------------------------------------------------------X
IBRAHIM KNIDEL                           :
                                        :
            Plaintiff,          :
                                          :
v.                                     :
                                        :
T.N.Z., INC., NOURIA ENERGY     :           **COMPLAINT**
RETAIL, INC., NOURIA ENERGY :
CORPORATION, AND ZIAD EL-NEMR  :
                                        :
           Defendants.       :
------------------------------------------------------X

Plaintiff, Ibrahim Knidel, complaining of Defendants T.N.Z., Inc., Nouria Energy Retail, Inc., Nouria Energy Corporation and Ziad El-Nemr, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for Defendants' violations of the Family and Medical Leave Act, 29 U.S.C. 2601, *et seq.* ("FMLA"), by (1) dismissing Plaintiff from his employment and otherwise discriminating against him; (2) interfering with his rights under the FMLA by, among other things, failing to provide lawful notice and denying him time off; and (3) retaliating against Plaintiff for asserting his rights under the FMLA.

2. This is an action for Defendants' violations of G.L. c. 151B, §§ 4(4), 4(4A), 4(5), and 4(16), and Title I of the American with Disabilities Act, 42 U.S.C. § 12112 ("ADA"), by (1) dismissing Plaintiff from his employment and otherwise discriminating against him because of his association with a person with a disability and/or handicap; and (2) dismissing Plaintiff from his employment and for interfering or retaliating against Plaintiff for asserting his rights and/or for associating with a person with a disability and/or handicap.

3.   This is an action for (1) Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §

201, *et seq*. ("FLSA") and the Massachusetts Wage Law, G.L. c. 149, §§ 100 and 148, by (a)

failing to give Plaintiff meal breaks when he worked a period of more than six (6)

consecutive hours per day, and (b) failing to pay Plaintiff wages earned by him within the

period mandated by law, as well as for (2) Defendants' breach of contract with Plaintiff by

promising to pay him at a rate of $10 per hour for a period of time and paying him at a rate of

$9 per hour for that period of time.

## JURISDICTION

4.   This Court has jurisdiction over Plaintiff's federal claims pursuant to 29 U.S.C. § 216(b), 42

U.S.C. § 12112 and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over

Plaintiff's Massachusetts state law claims pursuant to 28 U.S.C. § 1367.

5.   Plaintiff filed a timely charge with the Massachusetts Commission Against Discrimination on

October 3, 2013, and received a notice of a Dismissal.

6.   Plaintiff has received a Right to Sue from the Equal Employment Opportunity Commission.

7.   Plaintiff filed a proper and timely complaint regarding wage related claims with the

Massachusetts Attorney General's Office, and received authorization to file a private law suit.

## VENUE

8.   Venue is proper in the District of Massachusetts, Central Division under 29 U.S.C. § 216(b)

and 28 U.S.C. § 1391, as Plaintiff was employed by Defendants within that Division.

## PARTIES

9.   Plaintiff, Ibrahim Knidel, resides in Worcester, Massachusetts.  He was employed by

Defendants at the T.N.Z., Inc. gas station located at 310 Washington Street, Auburn, MA

01501 from February 2009 to on or about January 13, 2013, when he was terminated.

10. During the period specified above, Plaintiff was a covered employee of Defendants within the meaning of all applicable federal and Massachusetts laws and regulations set forth in this Complaint.

11. Defendant T.N.Z., Inc. ("T.N.Z.") is a Massachusetts corporation that, upon information and belief, owns and/or manages and/or operates the gas station at which Plaintiff was employed ("T.N.Z. Gas").

12. T.N.Z. is a covered employer within the meaning of all applicable federal and Massachusetts laws and regulations set forth in this Complaint.

13. Upon information and belief, Defendant Nouria Energy Retail, Inc. ("Nouria") is a Massachusetts corporation that, upon information and belief, owns or manages and/or operates T.N.Z. Gas.

14. Upon information and belief, Defendant Nouria Energy Corp. ("Nouria Corp.") is a Massachusetts corporation that, upon information and belief, is the management company of Nouria that owns or manages and/or operates T.N.Z. Gas.

15. Nouria and Nouria Corp. are referred to for purposes of this Complaint as "Nouria."

16. At all relevant times, Nouria established, administered and had authority regarding payroll and management practices of T.N.Z. Gas, including the human resource function and administration of the Family and Medical Leave Act ("FMLA").

17. Ann Army is an employee of Nouria who is responsible for the human resource function at T.N.Z. including FMLA compliance.

18. When Plaintiff worked for Defendants he received a handbook and other policies from Defendants entitled policies of Nouria Energy and that applied to all employees of Nouria Energy and its related corporations.

3

19. When Plaintiff was terminated from his employment in 2011, that termination was communicated on Nouria Energy letterhead.

20. Upon information and belief, Nouria exercised its employment-related authority jointly with Defendants T.N.Z. and Ziad El-Nemr.

21. Nouria is a covered employer within the meaning of all applicable federal and Massachusetts laws and regulations set forth in this Complaint.

22. Defendant Ziad El-Nemr ("El-Nemr") is an individual that, upon information and belief, is engaged in the ownership and/or management of T.N.Z. and Nouria.

23. El-Nemr is, on information and belief, the President or otherwise-titled controlling person of both T.N.Z., in which capacity he acts directly in the interest of and as an agent for that entity. On information and belief, El-Nemr had, at all relevant times, authority regarding the pay and management practices of T.N.Z. and Plaintiff's employment.

24. Upon information and belief, at all relevant times, El-Nemr exercised that authority at T.N.Z. Gas jointly with Defendants T.N.Z. and Nouria.  El-Nemr is an employer within the meaning of all applicable federal and Massachusetts laws and regulations.

## FACTS

25. In or around February 2009 Plaintiff began working for Defendants as a cashier at T.N.Z. Gas.

26. He was paid at a rate of $10 per hour.

27. Plaintiff identifies as a Muslim.

28. At all relevant times to the facts and circumstances alleged in this Complaint, Plaintiff performed his job in a satisfactory fashion and was qualified to perform the cashier position.

29. Sometime before the end of 2009 Plaintiff quit working for Defendants because El-Nemr and his father, Mr. Foad, made inappropriate and offensive comments about Plaintiff's religion.

30.  For example, at one point Mr. Foad said to Plaintiff in another language what most closely translated to, "Fuck you and your God."

31. Shortly thereafter, El-Nemr and another employee (name unknown) called Plaintiff at home and asked him to come back to work.  El-Nemr apologized for Mr. Foad's comments, telling Plaintiff that the comments were a result of his father's age.

32. El-Nemr told Plaintiff that he would come back to work at a pay-rate of $10 per hour and an additional amount in cash.

33. In or about August 2010, induced by El-Nemr's promise to pay him $10 plus an additional amount per hour, as well as a promise that he would be "treated well" and later receive an additional raise, Plaintiff returned to work at T.N.Z. Gas as a cashier.

34. Rather than receiving the promised wages, Plaintiff was paid at a rate of $9 per hour.

35. During Plaintiff's first and second terms of employment with Defendants, he was often required to work up to nine hour shifts without a meal break.

36. During Plaintiff's first and second terms of employment with Defendants, they failed to give Plaintiff meal breaks when he worked periods of more than six (6) consecutive hours per day.

37. During the course of his employment with Defendants, Plaintiff often requested breaks of El-Nemr, but those requests were denied.

38. In response to Plaintiff's requests for breaks, El-Nemr would make comments threatening Plaintiff's continued employment with Defendants.

39. For example, in response to Plaintiff's requests, El-Nemr would say "I am going to look for someone else if you do not want to work."

40. In or around August of 2012, approximately three years after commencing his employment with Defendants, Plaintiff learned that all employees of T.N.Z. Gas are entitled to vacation pay pursuant to company policy.

41. Up until that date, Plaintiff had never been told of this policy nor had he ever been paid vacation pay for days he had taken off or for unused time.

42. After learning of the policy, Plaintiff requested, and (after first being denied) eventually received one week off of paid vacation.

**Discrimination and Family Medical Leave Act Related Facts**

43. Plaintiff's wife, Ruth Knidel, has a permanent handicap of rheumatoid arthritis that had been diagnosed prior to 2009, Plaintiff's first term of employment with Defendants.

44. Each year Mrs. Knidel is required to recertify her eligibility for Worcester Housing, SSA and SSDI benefits, which, when he was employed with Defendants, required Plaintiff to obtain his wage information from Defendants.

45. Each year when Plaintiff attempted to acquire this information from Defendants in the form required by the benefit programs, Plaintiff told Defendants of his wife's disability. Each year, Defendant resisted giving Plaintiff the information or resisted giving it to him in the form required.

46. In or around March of 2012, Mrs. Knidel became pregnant.

47. Plaintiff informed Defendants of his wife's pregnancy, that it was a "high risk" pregnancy because of her handicap, and that he would have to attend many medical appointments with her, all of which he would schedule for after his shift.

48. When Plaintiff would attempt to leave his shift on-time in order to go to the appointments, El-Nemr would make negative comments and discourage Plaintiff from leaving work for the appointment.

49. On one occasion, upon seeing Mrs. Knidel, El-Nemr said to her "Why does he have to go with you.  You are a woman.  My wife goes by herself."

50. On multiple occasions, El-Nemr made similar negative comments to both Plaintiff and Mrs. Knidel about her need for Plaintiff to attend her doctor's appointment.

51. Often, El-Nemr would insist that Plaintiff stay after his shift was over, causing him to miss Mrs. Knidel's doctor's appointments.

52. On a number of occasions, Plaintiff offered to bring letters from Mrs. Knidel's doctors verifying her various conditions and the need for him to go to the appointments, but El-Nemr refused these offers.

53. On multiple occasions after informing Defendants about Mrs. Knidel's handicap and pregnancy, Plaintiff asked El-Nemr for vacation time to prepare for the arrival of their baby.

54. El-Nemr told Plaintiff that if he took vacation time to prepare for the arrival of the baby, that he would not be able to take time off when the baby arrived.

55. In or around the beginning of December 2012, Plaintiff received a phone call and needed to leave work approximately ninety (90) minutes early, believing his wife was in labor.

56. Plaintiff was unable to reach El-Nemr to inform him about the necessity of leaving early but arranged for a co-worker to cover the last ninety minutes of Plaintiff's shift.

57. As it turned out, Mrs. Knidel did not have the baby at that time and Plaintiff returned to work for his next shift.

58. During his next shift, Plaintiff informed El-Nemr about having left ninety minutes early.

59. El-Nemr admonished Plaintiff and told him he should not have left early and instructed him not to do it again.

60. On December 11, 2012, while Plaintiff was at work, Mrs. Knidel went into labor and was admitted to the hospital.  Plaintiff, mindful of El-Nemr's warning not to leave early and fearful for his job, finished his shift before going to the hospital.

61. That evening Plaintiff phoned his manager, Abdo Samad Bayu, telling him that Mrs. Knidel was still in labor and that he would probably not be able to work the next day.

62. Mr. Bayu told Plaintiff that Plaintiff was required to work on Wednesday.

63. Plaintiff went to work on Wednesday as was required of him.

64. During his shift Plaintiff received a call regarding his wife's health condition and her increasingly active labor and Plaintiff had to leave work to be with his wife.  Plaintiff made El-Nemr aware that he had to leave work and El-Nemr reluctantly agreed to find someone else to cover the remainder of Plaintiff's shift.

65. The next evening, December 12, 2012, Plaintiff again phoned Mr. Bayu, telling him that Mrs. Knidel was still in labor and that Plaintiff anticipated being out for the next couple of days.

66. Mr. Bayu told Plaintiff that Mr. Bayu would find someone to work Plaintiff's shifts for the next two days, a Thursday and a Friday; but that Plaintiff would have to work Saturday, December15, 2012.

67. On December 13, 2012, Plaintiff's son was born.

68. During the delivery of their son, Mrs. Knidel suffered a severe stroke; she remained hospitalized and was admitted to a rehabilitation center for several weeks after being discharged from the hospital.

69. After her stroke, Mrs. Knidel was substantially limited in her ability to walk, utilizing a wheelchair, as well as in her ability to otherwise care for herself and her newborn son.

70. Despite his wife and son being in the hospital, Plaintiff worked on December 15, 2012 as was required of him.

71. That day Plaintiff reported his wife's medical condition to El-Nemr and, specifically, that his wife had had a severe stroke, that she was unable to move the right side of her body, and that she was not yet being discharged from the hospital.

72. After his shift that day, Plaintiff picked his son up from the hospital and took him home.

73. On December 15, 2012, Kimberly Williams, a friend of the Plaintiff and former employee of the Dunkin Donuts at the T.N.Z. location where Plaintiff also worked, phoned El-Nemr who also told him about Mrs. Knidel's stroke, the complicated birth of Plaintiff's son, that Mrs. Knidel was partially paralyzed, and that Plaintiff needed time off to hire and train a personal care attendant ("PCA") for his wife and to generally care for his wife and newborn son.

74. During that conversation, El-Nemr asked Ms. Williams if Plaintiff wanted to quit his job.

75. Ms. Williams assured El-Nemr that Plaintiff did not want to quit, but that he wanted to take FMLA leave and then return to work.

76. Ms. Williams told El-Nemr that Plaintiff was entitled to three (3) months of FMLA leave, of which, according to El-Nemr, he was aware.

77. In that conversation with Ms. Williams, El-Nemr told her that it was "no problem" for Plaintiff to take the time off and that he would instruct Mr. Bayu to give Plaintiff the time off.

78. In the evening on December 15, 2012, Plaintiff phoned Mr. Bayu and told him about Mrs. Knidel's medical problems and that Plaintiff would need some time off to care for her and his newborn son.

79. Mr. Bayu told Plaintiff that Mr. Bayu would discuss Plaintiff's need for leave with El-Nemr and asked how much time Plaintiff would need.

80. Plaintiff told Mr. Bayu that he did not know how much time he would need to take.

81. On or about December 17, 2012, El-Nemr phoned Plaintiff at home and asked him what was going on.

82. Plaintiff again told El-Nemr about his wife's medical problems and that Plaintiff would need some time off to care for her and his newborn son.

83. El-Nemr asked Plaintiff if he wanted him to "hold his job."

84. Plaintiff replied, "Yes," and E-Nemr said "OK" and Plaintiff assumed that he was on approved (albeit unpaid) leave.

85. At no time thereafter did Plaintiff discuss, nor was he asked about, the amount of time he needed off to care for his wife and his newborn son.

86. On or around December 18, 2012, Ann Army from human resources was informed by El-Nemrthat Plaintiff needed a few months off.

87. Sometime between December 25, 2012 and January 1, 2013 Ms. Williams phoned El-Nemr to tell him that Mrs. Knidel's condition had worsened and that Plaintiff still had no one else to care for his newborn son because the PCA that had been hired was only qualified to care for Mrs. Knidel.

88. El-Nemr told Ms. Williams that he approved Plaintiff's taking FMLA leave and that Plaintiff would be able to return to his job.

89. On or about January 11, 2013, Mrs. Knidel was released from the rehabilitation center though she continued to have limited mobility in her legs and arms, utilizing a wheelchair at all times to move around, and both a PCA and Plaintiff to assist with her daily life activities.

90. As a result of Plaintiff being on unpaid leave, Plaintiff and his wife needed to apply for public benefits, including Food Stamps and Cash Assistance.

91. During the application process, Plaintiff was informed that he needed a letter from his employer stating the last day he worked before he took unpaid leave.

92. On or about January 17, 2013, Plaintiff phoned El-Nemr to request the letter.

93. El-Nemr told Plaintiff "I can't give you a letter because you quit."

94. Plaintiff told El-Nemr that he did not quit and that he was on unpaid leave that El-Nemr himself had approved.

95. El-Nemr told Plaintiff that he had been attempting to contact Plaintiff by phone, and that Plaintiff had not responded to those calls, and so El-Nemr considered Plaintiff to have quit his employment.

96. El-Nemr said that Plaintiff was not on leave, that his employment was terminated, that there was nothing El-Nemr could do to save Plaintiff's employment, and that if Plaintiff wanted a letter Plaintiff would have to call Human Resources.

97. Plaintiff asked El-Nemr for the number to Human Resources, which El-Nemr provided.

98. Plaintiff phoned Human Resources as instructed by El-Nemr and left a message requesting a letter stating his last day of work before going out on leave.

99. Plaintiff never received a call back from Human Resources and he never received the requested letter.

100.    To that date, Plaintiff had never received any calls from El-Nemr or anyone on behalf of Defendants regarding anything including his leave or seeking information about his return to work.

101.   None of the Defendants, nor anyone on their behalf, ever spoke to Plaintiff about his rights under the FMLA or other disability laws, other than the brief conversations with El-Nemr set forth in this Complaint.

102.   None of the Defendants, nor anyone on their behalf, ever provided Plaintiff with written notice regarding his FMLA rights and responsibilities.

103.   At no time did Defendants or anyone on their behalf contact Plaintiff regarding his leave or regarding his termination from employment other than those conversations set forth in the Complaint.


**CLAIMS FOR RELIEF**

**Count I -** *Violations of the FMLA, 29 U.S.C. § 2601 et seq.*

104.   Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein. Plaintiff is an eligible employee within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).Defendants are employers within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).At all times relevant to this complaint, Plaintiff's spouse, Ruth Knidel, had a serious health condition within the meaning of the FMLA, 29 U.S.C. § 2611(11).

105.   Plaintiff's child is his son within the meaning of the FMLA, 29 U.S.C. § 2611(12).

106.   Because of the birth of Plaintiff's son and Plaintiff's need to care for him, he was entitled to leave pursuant to 29 U.S.C. § 2612(A).

107.   Because of his wife's serious health condition, and Plaintiff's need to care for her, he was entitled to leave in order to care for her pursuant to 29 U.S.C. § 2612(C).

*Interference with Plaintiff's rights in violation of the FMLA, 29 U.S.C. §2601 et seq.*

108.    Defendants did not designate Plaintiff's leave as FMLA qualifying and did not post the required notice on their premises regarding FMLA leave in violation of 29 C.F.R. 825.300(a) nor did they explain to Plaintiff his right to take leave pursuant to the FMLA when Defendants acquired knowledge that Plaintiff's need for leave may have been for an FMLA-qualifying reason, in violation of 29 C.F.R. 825.300(b).

109.    Defendant did not provide Plaintiff with written notice detailing his specific expectations and obligations under the FMLA, and explaining any consequences of a failure to meet those obligations. 29 CFR 825.300(c).

110.    Defendant did not designate leave as FMLA qualifying or provide Plaintiff with written designation of whether his absences qualified for FMLA leave. 29 CFR 825.300(d).

111.    Defendant did not designate FMLA leave in violation of 29 CFR 825.301 et seq.

In violating 29 C.F.R. 825.300(a) through (d) et seq and 29 CFR 825.301 et seq., Defendants interfered with, restrained, or denied the exercise of or the attempt to exercise Plaintiff's rights pursuant to Pursuant to 29 U.S.C. § 2614(a)(1), Plaintiff was entitled to compensation and benefits lost by reason of the violation and to be restored by the defendants to the position of employment held by him when his leave commenced.

112.    Such violations were knowing and willful.

113.    Defendants conduct, as set forth above constitutes violations of the FMLA as set forth in, 29 U.S.C. § 2615(a)(1), and the regulations promulgated thereunder.

114.    As a result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer

damages and he is entitled to compensation and liquidated damages as a result of this harm.

**Retaliation and Discrimination against Plaintiff in violation of FMLA, 29 U.S.C. § 2601 et seq.**

115.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

116.    Plaintiff exercised or attempted to exercise his rights protected by the FMLA.

117.    Plaintiff was terminated or not restored to his position as a result of taking or attempting

to take covered leave in retaliation for asserting his rights under the FMLA.

118.    Defendants conduct, as set forth above, constitutes violation of the FMLA, 29 U.S.C. §

2615(a)(2), and the regulations promulgated thereunderAs a result of Defendants unlawful

conduct, Plaintiff has suffered and continues to suffer damages and he is entitled to

compensation and liquidated damages as a result of this harm.

**COUNT II –** *Discrimination in violation of G.L. c. 151B*

**Discrimination in violation of State law, G.L. c. 151B, §§ 4, 4(4A), 4(5), and 4(16)**

119.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

120.    Plaintiff's wife was, at all applicable times, an individual with a disability and/or

handicap or regarded as an individual with a disability and/or handicap within the meaning of

G.L. c. 151B § 1.

121.    Defendants were aware of this disability and/or handicap when they took adverse

employment action against the Plaintiff, including terminating his employment.

122.    After and following Mrs. Knidel's stroke and the birth of their son, Defendants regarded

Plaintiff as an individual with a disability or handicap within the meaning of G.L. c. 151B §§

1 and 4(16).

123.    At all relevant times Plaintiff was a qualified individual within the meaning of G.L. c.

151B § 1.

124.    Defendants terminated Plaintiff by dismissing him from his employment and/or otherwise

discriminating against him because of his association with a person with a disability and/or

handicap in violation of law.

125.    As a result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer

damages and he is entitled to compensation as a result of this harm.


**COUNT III - *Discrimination in violation of Federal law, 42 U.S.C. § 12112***

126.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

127.    Plaintiff's wife was, at all applicable times, an individual with a disability and/or

handicap or regarded as an individual with a disability and/or handicap within the meaning of

the ADA, 42 U.S.C. § 12102.

128.    Defendants were aware of this disability and/or handicap when they took adverse

employment action against the Plaintiff, including terminating his employment.

129.    After and following Mrs. Knidel's stroke and the birth of their son, Defendants regarded

Plaintiff as an individual with a disability or handicap within the meaning of the ADA, 42

U.S.C. 12102.

130.    At all relevant times Plaintiff was a qualified individual within the meaning of the ADA,

42 U.S.C. § 12111.

131.    Defendants terminated Plaintiff by dismissing him from his employment and or otherwise

discriminating against him because of his association with a person with a disability and/or

handicap in violation of law.

132.    As a result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer

damages and is entitled to compensation as a result of this harm.

**COUNT IV- *Retaliation in Violation of G.L. c. 151B § 4(4)***

133.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

134.    Defendants retaliated against Plaintiff for asserting his rights under G.L. c. 151B *et seq.*

and/or for associating with a person with a disability.

135.    As a result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer

harm and damages as a result.

**COUNT V- *Retaliation in Violation of Title I of the ADA, 42, U.S.C. § 12112***

136.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

137.    Defendants retaliated against Plaintiff for asserting his rights under Title I of the ADA,

42, U.S.C. § 12100 *et seq*. and/or for associating with a person with a disability.

138.    As a result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer

harm and damages as a result.

**COUNT VI - *Failure to Provide Meal Breaks in violation of M.G.L. c. 149 § 100***

139.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

140.    Defendants failed to provide Plaintiff with meal breaks despite his working shifts in

excess of seven (7), eight (8), or nine (9) hours without a break in violation of M.G.L c. 149

§100.

141.    Plaintiff did not voluntarily give up such meal breaks.

142.    Such violations were willful in that Defendants knowingly and intentionally failed to give Plaintiff these breaks despite his repeated requests for them in violation of Massachusetts law.

**COUNT VII -** *Failure to pay Vacation and Other Pay in violation of M.G.L. c. 149 §148*

143.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

144.    Defendant failed to pay Plaintiff earned vacation pay and a portion of Plaintiff's hourly wages both during and at the end of his employment in violation of M.G.L. ch. 149 § 148.

145.    Such violations were willful in that Defendants knowingly and intentionally failed to pay Plaintiff vacation pay despite a policy that such pay was available.

**COUNT VIII -** *Failure to pay Vacation Pay in violation of 29 U.S.C. 206*

146.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

147.    Defendant failed to pay Plaintiff earned vacation pay both during and at the end of his employment in violation of 29 U.S.C. 206.

148.    Such violations were willful in that Defendants knowingly and intentionally failed to pay Plaintiff vacation pay despite a policy that such pay was available.

**COUNT IX -** *Breach of Contract*

149.    Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

150.    Defendants promised to pay Plaintiff $10 per hour and an additional amount in cash if he returned to work for them in or around August 2010.

151.    Relying on this promise, Plaintiff returned to work for the Defendants.

152.    Defendants failed to pay Plaintiff the promised amount, thereby breaching their contract with Plaintiff in violation of Massachusetts' law.

**COUNT X** – *Promissory Estoppel*

153.     Plaintiff repeats and re-alleges the allegations of all prior paragraphs herein.

154.    Defendants promised to pay Plaintiff $10 per hour and an additional amount in cash if he

returned to work for them in or around August 2010.

155.    Relying and acting on this promise, Plaintiff returned to work for the Defendants.

156.    Defendants failed to pay Plaintiff the promised amount, thereby breaching their promise

with Plaintiff in violation of Massachusetts' law.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Declare that Defendants knowingly or wilfully violated FMLA, 29 U.S.C. § 2601 *et*

*seq*., and award Plaintiff any relief authorized under the law;

2.  Declare that Defendants violated G.L. c. 151B, §§ 4, 4(4A), 4(5), and 4(16), that such

violation was willful, and award Plaintiff any relief authorized under the law;

3.  Declare that Defendants violated Title I of the ADA, 42 U.S.C. § 12112, and award

Plaintiff any relief authorized under the law;

4.  Declare that Defendants violated G.L. c. 151B § 4(4) by retaliating against Plaintiff

for asserting his rights under those laws and award him any relief authorized under the law;

5.  Declare that Defendants violated Title I of the ADA, 42, U.S.C. § 12112 by retaliating

against Plaintiff for asserting his rights under those laws and award him any relief authorized

under the law;

6.  Declare that Defendants violated M.G.L. c. 149 § 100, that such violation was willful, and award Plaintiff unpaid wages, liquidated damages, and any other relief authorized under the law;

7.  Declare that Defendants violated M.G.L. c. 149 §148 and that such violations were willful, and award Plaintiff unpaid wages, liquidated damages, and any other relief authorized under the law;

8.  Declare that Defendants violated 29 U.S.C. 206, that such violations were willful, and award Plaintiff unpaid wages, liquidated damages, and any other relief authorized under the law;

9.  Declare that Defendants breached their contract with Plaintiff or that Plaintiff relied on Defendant's promises to his detriment and award Plaintiff actual damages and any other relief authorized by law;

10.  Award Plaintiff pre- and post-judgment interest under applicable law;

11.  Award Plaintiff reasonable attorneys' fees and costs;

12.  Award Plaintiff such other relief as the Court deems just and proper.

THE PLAINTIFF REQUESTS A JURY ON ALL CLAIMS SO TRIABLE.

Dated: June 9, 2014

Respectfully Submitted,
IBRAHIM KNIDEL
By his attorney,

   /s/   Melissa Pomfred
Melissa Pomfred
mpomfred@cwjustice.org
Central West Justice Center
405 Main Street, 4th Floor

Worcester, MA 01608
P: (508) 752-3718
F: (508) 755-4240


    /s/ Suzanne Garrow
Suzanne Garrow BBO# 636548
sgarrow@hfmgpc.com
Heisler, Feldman, McCormick
        & Garrow, P.C.
293 Bridge Street, Suite 322
Springfield, MA  01103
Ph. (413) 788-7988
Fax (413) 788-7996
sgarrow@hfmgpc.com


## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

/s/ Suzanne Garrow
Suzanne Garrow