UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:14-CV-40079

IBRAHIM KNIDEL,
   Plaintiff,

v.

T.N.Z., INC. NOURIA ENERGY RETAIL,
INC., NOURIA ENERGY CORPORATION,
and ZIAD EL-NEMR,
   Defendants

**DEFENDANTS' MEMORANDUM
IN SUPPORT OF THE MOTION
FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, T.N.Z., Inc.

("T.N.Z."), Ziad El-Nemr, Nouria Energy Corporation, and Nouria Energy Retail, Inc. ("Nouria

Energy Retail" and, collectively with Nouria Energy Corporation, "Nouria Energy"), move for

summary judgment on Plaintiff, Ibrahim Knidel's claims.

## STATEMENT OF FACTS

In accordance with Local Rule 56.1, Defendants submitted a Concise Statement of

Material Facts in conjunction with their Motion for Summary Judgment and respectfully refer

the Court to that document for a full account of the material, undisputed facts and full record

references. For the Court's convenience, a summary of those facts appears below:

### I.    Plaintiff's Employment with T.N.Z.

Plaintiff started working for T.N.Z. on February 11, 2009, after he was interviewed and

hired by Ziad El-Nemr. See Concise Statement of Material Facts ("CSMF") ¶¶ 1-2. When he

was hired, Plaintiff's rate of pay was $10 per hour. See CSMF ¶ 3. On or around August 17,

2009, Plaintiff quit working for T.N.Z. See CSMF ¶ 4. Plaintiff alleges that in July or August

2009, Ziad El-Nemr offered him "a raise" of an unspecified amount and "fifty dollars for gas" if

Plaintiff "c[a]me back" to work for T.N.Z. See CSMF ¶ 5. However, Plaintiff admits that Ziad El-Nemr did not promise a specific dollar amount for the alleged raise. See CSMF ¶ 6. Plaintiff rejected Ziad El-Nemr's offer and began working for Cumberland Farms. See CSMF ¶¶ 7-8.

On or about June 26, 2010, Plaintiff quit working for Cumberland Farms. See CSMF ¶ 9. Plaintiff called Abdessamad Bayi, the Manager of T.N.Z., or Salah Bekri, a cashier with T.N.Z. and asked if there was an opening at T.N.Z., but he did not ask what his rate of pay would be if/when he became re-employed. See CSMF ¶ 10-11. When Ziad El-Nemr re-hired Plaintiff as a cashier in August 2010, Plaintiff's rate of pay was $9.00 per hour. See CSMF ¶¶ 12-13. On or about August 10, 2010, Plaintiff signed acknowledgments that he received a copy of the Nouria Energy Handbook, Safety Policy, Dress Code and Grooming Policy, Age Restricted Products policy, Workplace Harassment policy and, on the same date, Plaintiff signed an Alcohol and Tobacco Sales Employee Compliance Statement, an Employee Direct Deposit Authorization, and a Uniform Agreement. (collectively, the "Nouria Forms"). See CSMF ¶ 56. The Nouria Forms were part of the "application" that Ziad El-Nemr gave Plaintiff. See CSMF ¶ 57. Ziad El-Nemr used the Nouria Forms and application when he ran out of T.N.Z.'s separate application and he forgot to change the Nouria Forms to remove Nouria Energy's name. See CSMF ¶ 58. Plaintiff's rate of pay was increased to $9.50 per hour on or about April 22, 2012, and $10.00 per hour on or about May 21, 2012. See CSMF ¶¶ 18-19.

Plaintiff was trained by Salah Bekri and Abdessamad Bayi when he first started working for T.N.Z. in 2009 and he was re-trained by Abdessamad Bayi and Mustafa Mahdi when he was rehired by T.N.Z. in 2010. See CSMF ¶ ¶ 42-43. Ziad El-Nemr set Plaintiff's rates of pay and Plaintiff's schedule and gave Plaintiff directions regarding his job, his uniform, and his paychecks. See CSMF ¶¶ 44-46, 48, 50. Plaintiff asked Ziad El-Nemr questions about his

schedule and job duties and for authorization to take vacation. <u>See</u> CSMF ¶¶ 47, 49. Plaintiff did not work for any other gas station other than T.N.Z.'s location. <u>See</u> CSMF ¶ 51.

Pursuant to T.N.Z.'s vacation policy, employees are given one week of paid vacation per year after they have worked for T.N.Z. for one year. <u>See</u> CSMF ¶ 15. Plaintiff was never promised paid vacation by T.N.Z. <u>See</u> CSMF ¶ 17. On or about July 23, 2011, Plaintiff began a two-month leave of absence, during which he traveled to Morocco. <u>See</u> CSMF ¶ 14. Plaintiff was not eligible for vacation pay during his absence because he had not worked for T.N.Z. for one year. <u>See</u> CSMF ¶ 16. During the week of October 21 – 27, 2012, Plaintiff took a one-week paid vacation from T.N.Z. <u>See</u> CSMF ¶ 20.

Plaintiff's child was born on December 15, 2012. <u>See</u> CSMF ¶ 24. On Saturday, December 15, 2012, Plaintiff called T.N.Z. and spoke to Abdessamad Bayi and said that he needed days, not months, off of work. <u>See</u> CSMF ¶¶ 26-27. Abdessamad Bayi told Plaintiff that he could have time off. <u>See</u> CSMF ¶ 28. On Monday, December 17, 2012, Ziad El-Nemr told Plaintiff over the phone to "[t]ake whatever time you need." <u>See</u> CSMF ¶ 29.

In late December or early January 2013, Abdessamad Bayi called Plaintiff and, during the conversation, Plaintiff said that he did not know when he was coming back to work but that "[a]s soon as my wife come home, I'll be there." <u>See</u> CSMF ¶ 30. Plaintiff also said that he "will call them" when he can return to work. <u>See</u> <u>id.</u> Two additional, substantially similar calls occurred between Plaintiff and Abdessamad Bayi. <u>See</u> CSMF ¶ 31. Plaintiff's wife was discharged from Fairlawn Rehabilitation Center on January 11, 2013 and returned home. <u>See</u> CSMF ¶ 32. Plaintiff could have "gone back to work as soon as [his wife] got home." <u>See</u> CSMF ¶ 33.

Approximately one week after Plaintiff's wife came home, Plaintiff called Ziad El-Nemr and asked him for a letter stating the last day that Plaintiff worked. See CSMF ¶ 34. Plaintiff alleges that Ziad El-Nemr said that he could not give Plaintiff "a letter because we have been calling you. You never answer the phone. So you quit." See CSMF ¶ 35. However, Plaintiff admitted that he spoke to Abdessamad Bayi after he spoke with Ziad El-Nemr and Abdessamad Bayi told Plaintiff that he was "not fired." See CSMF ¶ 36.

T.N.Z. understood that Plaintiff wanted to return to work part-time. See CSMF ¶ 37. On the date Plaintiff was scheduled to return to work part-time, he did not show up for work. See id. When Ziad El-Nemr called Plaintiff, Plaintiff stated that his car had broken down. See id. Ziad El-Nemr told Plaintiff to fix the car and return to work when he was ready. See id. Plaintiff never returned to work. See id. Ziad El-Nemr made the determination that Plaintiff quit when he received a letter regarding Plaintiff's claim for unemployment benefits in March or April 2013. See CSMF ¶¶ 38-40.

Plaintiff was not employed by Nouria Energy. See CSMF ¶ 41. During his employment with T.N.Z., Plaintiff never spoke with or met Ann Army, the Human Resources Manager for Nouria Energy. See CSMF ¶¶ 52-53. In addition, neither Tony El-Nemr, the owner of Nouria Energy, or any other manager of Nouria Energy ever gave Plaintiff directions about his job. See CSMF ¶¶ 54-55.

## II. Plaintiff's Wage Complaint.

In the Non-Payment of Wage and Workplace Complaint Form submitted to the Massachusetts Attorney General on behalf of Plaintiff (the "Wage Complaint Form"), Plaintiff claimed that he was owed vacation pay, but Plaintiff did not claim that there were any other wages owed to him. See CSMF ¶ 60. The Wage Complaint Form indicates that Plaintiff's "reason for filing complaint" were "vacation pay violation" and "meal period violation;" Plaintiff

did not indicate that "non-payment of wages" was a "reason for filing complaint." See CSMF ¶ 61.

## III.   Plaintiff's MCAD/EEOC Charge.

In his Charge of discrimination (the "MCAD/EEOC Charge") filed with the Massachusetts Commission Against Discrimination ("MCAD") and cross-filed with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff only named T.N.Z., Ziad El-Nemr, and Nouria Energy Corporation as respondents. See CSMF ¶ 62. Plaintiff did not name Nouria Energy Retail as a respondent. See CSMF ¶ 63. In the MCAD/EEOC Charge, Plaintiff alleged that "Respondents terminated me because of discriminatory animus directed toward me as a result of my association with my wife and their desire to be free from their obligations under the law, including but not limited to its obligation to provide me with time off under the Family Medical Leave Act." See CSMF ¶ 64.

## IV.   Nouria Energy and T.N.Z.

### A.   Corporate Background of T.N.Z.

Ziad El-Nemr is, and has been since 2005, the President, Treasurer, Secretary, and sole Director of T.N.Z. See CSMF ¶¶ 66-67. Only Ziad El-Nemr has an ownership interest and control over T.N.Z. See CSMF ¶ 69. Tony El-Nemr has no ownership interest in T.N.Z. and is not involved in T.N.Z.'s operations. See CSMF ¶ 70-71. T.N.Z.'s principal office is located at 310 Washington Street, Auburn, Massachusetts ("310 Washington Street"). See CSMF ¶ 68.

### B.   Corporate Background of Nouria Energy

Ziad El-Nemr's older brother is Tony El-Nemr. See CSMF ¶ 65. Tony El-Nemr is, and has been since its incorporation in 1999, the President, Treasurer, Secretary, and sole Director of Nouria Energy Corporation. See CSMF ¶¶ 74-75.

Nouria Energy Corporation's principal office is located at 326 Clark Street, Worcester, Massachusetts. See CSMF ¶ 76. Nouria Energy Corporation has no employees. See CSMF ¶ 78. Nouria Energy Corporation provides administrative support for the Nouria Energy companies. See CSMF ¶ 77.

Tony El-Nemr is, and has been since its incorporation, the President, Treasurer, Secretary, and sole Director of Nouria Energy Retail. See CSMF ¶ 79.

Nouria Energy Retail's principal office is located at 326 Clark Street, Worcester, Massachusetts. See CSMF ¶ 80. Nouria Energy Retail operates the convenience stores and the retail gasoline locations owned by the Nouria Energy companies and pay the wages for the hourly employees at Nouria Energy's retail locations. See CSMF ¶¶ 81-82.

T.N.Z has never been a part of Nouria Energy. See CSMF ¶ 83. Ziad El-Nemr and T.N.Z. do not have ownership of any of Nouria Energy's companies. See CSMF ¶ 84. Ziad El-Nemr has never been involved in the operations of Nouria Energy. See CSMF ¶ 85. T.N.Z. and Nouria Energy are "two separate companies" and Ziad El-Nemr is "independent" of Nouria Energy. See CSMF ¶ 86.

C.    Contractual Relationship between T.N.Z. and Nouria Energy

Prior to March 30, 2011, T.N.Z. rented the land at 310 Washington Street from Motiva (Shell) pursuant to the Retail Facility Lease. See CSMF ¶¶ 87-89. Prior to March 30, 2011, T.N.Z. was not a dealer for Nouria, but instead purchased the gasoline it sold from Nouria. See CSMF ¶¶ 90-91.

The land at 310 Washington Street is presently owned by GTY Properties and leased by Nouria Energy Corporation. See CSMF ¶¶ 92-93. In turn, T.N.Z. leases the land from Nouria Energy Corporation pursuant to the Rider – Management Fee Arrangement between T.N.Z. and Nouria Energy Corporation, dated August 1, 2011. See CSMF ¶ 94. Pursuant to the Rider –

Management Fee Arrangement, T.N.Z. rents the land from Nouria Energy Corporation for $5,000 per month and is a "commissioned dealer" for Nouria Energy Corporation, which means that it sells motor fuel owned by Nouria Energy Corporation on a "commission basis" at the rate of five cents per gallon for each gallon of motor fuel sold. See CSMF ¶¶ 95-96. The term of the Rider – Management Fee Arrangement was from August 1, 2011 through July 31, 2012 and continued "from month to month thereafter." See CSMF ¶ 97.

Nouria Energy Corporation and T.N.Z. are presently parties to the Management Fee Station Lease, dated December 19, 2014, which provides that T.N.Z. leases 310 Washington Street from Nouria Energy Corporation for a monthly rent of $5,000. See CSMF ¶¶ 98-99. In addition, the Management Fee Station Lease provides that "[T.N.Z.] is an independent businessman with the exclusive right to direct and control its convenience store business and, where applicable, other business operations at the above premises. [Nouria Energy Corporation] reserves no control over said business(es) at the above Premises. [T.N.Z.] has no authority to employ anyone as an employee or agent of [Nouria Energy Corporation] for any purpose." See CSMF ¶ 100.

T.N.Z. continues to be a "commissioned dealer" for Nouria Energy Corporation pursuant to the Management Fee Agreement, dated December 19, 2014. See CSMF ¶ ¶ 101-102, 104. Pursuant to the Management Fee Agreement, "the means, methods and details are left entirely to the discretion and judgment of [T.N.Z.] for the purpose and accomplishment of" selling gasoline and the parties "expressly agreed and stipulated that neither [T.N.Z.] nor the employees of [T.N.Z.] shall be deemed or construed to be employees of [Nouria Energy Corporation]." See CSMF ¶ 103. T.N.Z. is one of four commissioned dealers for Nouria Energy. See CSMF ¶ 105.

    D.    <u>Nouria Energy's Involvement with T.N.Z.</u>

Ziad El-Nemr does not consult Tony El-Nemr on business matters. See CSMF ¶ 109. No one from Nouria Energy assists T.N.Z. with merchandising. See CSMF ¶ 110. T.N.Z. is a Licensed Sales Agent for the Massachusetts Lottery. See CSMF ¶ 116. The Alcoholic Beverages License for 310 Washington Street was held by T.N.Z. for years 2010, 2011, 2012, and 2013. See CSMF ¶ 108. T.N.Z.'s records (apart from the payroll records) are stored at 310 Washington Street. See CSMF ¶ ¶ 124-125. T.N.Z. does not use Nouria Energy's office space. See CSMF ¶ 126.

T.N.Z. and Nouria Energy do not share employees, landscape services, cleaning services, utility services, maintenance services, or a bank account. See CSMF ¶¶ 122-123, 131. T.N.Z.'s taxes are prepared by Tom Marabella. See CSMF ¶ 117. Nouria Energy's taxes are prepared by Bollus Lynch LLP. See CSMF ¶ 118. T.N.Z.'s workers' compensation insurer is Twin City Fire Insurance Company. See CSMF ¶ 119. Nouria Energy's workers' compensation insurer is Federated Insurance, and the insurance does not cover T.N.Z. and/or 310 Washington Street. See CSMF ¶¶ 120-121. T.N.Z. does not have a mailbox at Nouria Energy. See CSMF ¶ 129.

Tony El-Nemr has check signing authority for T.N.Z. See CSMF ¶ 111. Tony El-Nemr has check signing authority for T.N.Z. in order to "help [his] brother . . . [i]f [Ziad El-Nemr] is not free and there [are] checks [that] need to be paid for the vendors, [Tony El-Nemr] sign[s] them." See CSMF ¶ 112. Tony El-Nemr's check signing authority has "[n]othing to do with Nouria. Its personal" because Tony El-Nemr is Ziad El-Nemr's "big brother." See CSMF ¶ 113. Apart from Tony El-Nemr's authority to sign checks for T.N.Z., no one at Nouria Energy has authority to sign anything on behalf of T.N.Z. See CSMF ¶ 115.

Ziad El-Nemr does not have authority to sign checks on behalf of Nouria Energy, represent himself as Nouria Energy, or make orders on Nouria Energy's accounts. See CSMF ¶¶ 114, 127-128. T.N.Z. does not provide services to Nouria Energy. See CSMF ¶ 130.

E.    T.N.Z.'s Labor Relations

T.N.Z. has eight employees. See CSMF ¶ 132. T.N.Z. has never had 15 or more employees. See CSMF ¶ 73. Ziad El-Nemr approves new hires for T.N.Z., makes the decision about when to take an employee off of T.N.Z.'s payroll, determines the rate of pay for employees of T.N.Z., determines if and when employees of T.N.Z. get a raise in pay, distributes uniforms to employees of T.N.Z., trained the manager of T.N.Z., and maintains employee files for T.N.Z.'s employees. See CSMF ¶¶ 133-138, 142. The manager of T.N.Z., Abdessamad Bayi, trains and makes the work schedule for T.N.Z. employees. See CSMF ¶¶ 139-140.

T.N.Z. and Nouria Energy do not share employees and employees of Nouria Energy do not cover shifts at T.N.Z. See CSMF ¶¶ 123, 141. Nouria Energy does not train T.N.Z.'s employees, have the power to hire, fire, discipline, or set the rate of pay for T.N.Z.'s employees, and does not supervise T.N.Z.'s employees, set their schedules, assign job duties, or exercise any control over them. See CSMF ¶¶ 142-150.

Nouria Energy does not require T.N.Z. to adopt any specific policies or programs. See CSMF ¶ 152. Nouria Energy does not prohibit T.N.Z. from adopting any policies or programs that are different than Nouria Energy's policies or programs. See CSMF ¶ 153.

F.    T.N.Z.'s Payroll Processing

Ann Army provides human resources support for Nouria Energy. See CSMF ¶ 155. Specifically, she is "involved in employee relations, payroll, benefits, all-around questions having to do with HR policies and procedures that employees had or managers had" for Nouria

Energy. See CSMF ¶ 156. Ann Army's salary is paid by Nouria Energy Services, Inc., which is not a party to this lawsuit. See CSMF ¶ 154.

Ann Army provides payroll processing services to T.N.Z., but she is not the Human Resources manager for T.N.Z. See CSMF ¶¶ 157-158. In providing payroll services to T.N.Z., Ann Army only enters the "time [for T.N.Z.] employees into the timesheet and enter[s] new hires. [She] had no other administrative responsibilities for payroll or practices . . . all [she] did was enter [T.N.Z.'s] payroll into the payroll." See CSMF ¶ 159. T.N.Z. pays the payroll companies, formerly ADP and now E-Pay, directly for their services. See CSMF ¶ 160. T.N.Z. uses the same payroll company as Nouria Energy – E-Pay – because "its cheaper" for T.N.Z. to do so. See CSMF ¶ 161.

Ann Army does not "approve or not approve any increases [in pay for T.N.Z.'s employees] . . . discipline, warnings, or performance appraisals; [she] had nothing to do with that. [She] had no input on anything that Ziad did with employees . . ." See CSMF ¶ 162. Ziad El-Nemr does not consult Ann Army regarding human resources issues. See CSMF ¶ 169. In addition, Ann Army does not: (a) communicate policies at T.N.Z.; (b) provide oversight to make sure that appropriate training or policies are implemented at T.N.Z.; (c) ensure that employees of T.N.Z. receive a handbook; or (d) approve new hires or re-hires at T.N.Z. See CSMF ¶¶ 163-168. In addition, Ann Army does not process paperwork related to training, policies, or handbooks at T.N.Z. See CSMF ¶ 166. Rather, Ann Army has "nothing to do with any of [Ziad El-Nemr's] decisions" at T.N.Z. See CSMF ¶ 170.

G. T.N.Z.'s Bookkeeping

Since March 10, 2010, Nouria Energy has performed the bookkeeping functions for T.N.Z. See CSMF ¶ 174. Presently, Susan Goodwin – an employee of Nouria Energy – performs the bookkeeping for T.N.Z. See CSMF ¶¶ 171-172. Specifically, in performing the

bookkeeping for T.N.Z., Susan Goodwin "enter[s] account payable invoices, print[s] the checks, or pay[s] the bills . . . enter[s] the bank transactions, [and] reconcil[es] the bank account" for T.N.Z. See CSMF ¶ 173.

## ARGUMENT

### I.    Standard of Review.

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  A fact is material "if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).  A genuine issue exists as to such fact "if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).  The Supreme Court has explained that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  While the court must take the "evidence in light most flattering to the party opposing summary judgment," the First Circuit has explained that this standard "does not give [the nonmoving party] a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  Rather, the factual conflicts upon which the nonmoving party relies "must be both genuine and material," and the court should discount "conclusory allegations, improbable inferences, and unsupported speculation." Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397-97 (1st Cir. 2012); Cochran, 328 F.3d at 6.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.Supp.2d 5, 8 (1st Cir. 1990).

## II.    Plaintiff Cannot Establish A *Prima Facie* Case Of FMLA Interference.

The FMLA guarantees an eligible employee the right to take twelve weeks of unpaid leave because of, among other things, the birth of his or her child. See 29 U.S.C. § 2612. The Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise or attempt to exercise any right protected [by the FMLA]." See 29 U.S.C. § 2615(a)(1). Specifically, Plaintiff claims that Defendants interfered with his rights under the FMLA because they did not: (1) "designate [his] leave as FMLA qualifying;" (2) "post the required notice on their premises regarding FMLA leave;" (3) "explain to Plaintiff his right to take leave pursuant to the FMLA;" (4) "provide Plaintiff with written notice detailing his specific expectations and obligations under the FMLA, and explaining any consequences of a failure to meet those obligations;" and (5) "provide Plaintiff with written designation of whether his absences qualified for FMLA leave." See Complaint ¶¶ 108-11.

To establish a claim for FMLA interference, Plaintiff must show that (1) he was an "eligible employee" under the FMLA; (2) the employer was a "covered employer" under the FMLA; (3) Plaintiff gave his employer adequate notice of his request for protected leave; (4) his leave was for a covered reason; and (5) he was not returned to an equivalent position at the end of his leave. See Surprise v. Innovation Grp., 925 F.Supp.2d 134, 145 (D. Mass. 2013) (citing Furtado v. Std. Parking Corp., 820 F.Supp.2d 261, 280 (D. Mass. 2011)). Plaintiff's claim of FMLA interference fails as a matter of law because Plaintiff was not an eligible employee, T.N.Z. and Ziad El-Nemr are not covered employers because they have less than 50 employees, Nouria Energy is not a covered employer because it is are not a "single employer" with T.N.Z., and the alleged technical violations of the FMLA regulations are not actionable because they do not apply to Defendants, and, in any event, Plaintiff suffered no harm as a result of the alleged violations.

### A.    Plaintiff Was Not An Eligible Employee.

At the outset, Plaintiff's claims of FMLA interference fail because Plaintiff was not an "eligible employee." An individual is entitled to the protections afforded by the FMLA only if he qualifies as an "eligible employee." Excluded from the definition of eligible employee is:

> Any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of the worksite is less than 50.

29 U.S.C. § 2611(2)(B)(ii). The Department of Labor's ("DOL") FMLA regulations provide that "whether 50 employees are employed within 75 miles to ascertain an employee's eligibility for FMLA benefits is determined when the employee gives notice of the need for leave." 29 C.F.R. § 825.110(e). Here, for the purposes of summary judgment, assuming that Plaintiff provided notice of his need for leave in December 2012, T.N.Z. had less than 50 employees at that time, and, therefore, Plaintiff was not an "eligible employee." See CSMF ¶ 73.

### B.    T.N.Z. And Ziad El-Nemr Are Not Covered Employers Because They Have Less Than 50 Employees.

Plaintiff's interference claim further fails because T.N.Z. and Ziad El-Nemr are not "covered employers" under the FMLA. An employer is a "covered employer" under the FMLA if it "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 C.F.R. § 825.104(a). T.N.Z. has never employed 50 or more employees. See CSMF ¶ 73. Therefore, T.N.Z. is not a covered employer. In addition, "covered employers" include "any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer . . ." 29 C.F.R. § 825.104(a). Since T.N.Z. is not a covered employer, no one – including Ziad El-Nemr – who acted in the interest of T.N.Z. is a covered employer.

### C. Nouria Energy Is Not A Covered Employer Because It Is A Single Employer With T.N.Z.

Defendants expect that Plaintiff will attempt to circumvent the fact that T.N.Z. and Ziad El-Nemr are not covered employers because they do not meet the 50-employee threshold, by theorizing that Nouria Energy Corporation – which has no employees – and Nouria Energy Retail – which has hundreds of employees – are a "single employer" with T.N.Z, which would result in all of the employees of the entities being counted for the purposes of determining if T.N.Z. is a covered employer. It is well-established that "[n]ormally the legal entity which employs the employee is the employer under FMLA . . ." Id. § 824.104(c). However, under the FMLA regulations, separate entities may be deemed to be a single employer if:

> [the separate entities] meet the "integrated employer" test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:
>
> (i) Common Management;
>
> (ii) Interrelation between operations;
>
> (iii) Centralized control of labor relations; and
>
> (iv) Common ownership.

Id. § 825.104(c)(1), (2). The First Circuit Court of Appeals has explained that the "50-employee exception is an economic one rooted in protecting small businesses, and the purpose of the 'integrated employer' test is to ensure that a defendant has not structured itself to avoid labor laws." Engelhardt v. S.P. Richards Co., 472 F.3d 1, 5 (1st Cir. 2006). Moreover, an employer "should have the benefit of the exemption if it maintains its economic identity as a small

business." Id. at 6. Notably, "[i]t is not enough for plaintiffs merely to show some interrelation among the corporate entities;" instead, they must present evidence that the corporate entities are interrelated to an unusual degree. See E.E.O.C. v. Con-Way, Inc., 2007 WL 2610367, at *4 (D. Or. Sept. 4, 2007). As set forth below, T.N.Z. is clearly not an integrated employer with Nouria Energy.

### (1)     There Is No Common Management.

In evaluating the first factor, the First Circuit analyzes whether (a) there is a common manager between the entities; (b) a manger of the smaller entity answers to any employee of the larger entity; and (c) the companies have independent directors who are not involved in running either business. See Engelhardt, 472 F.3d at 6.

Here, T.N.Z. and Nouria Energy do not have common management. The only managers of T.N.Z. are Ziad El-Nemr and Abdessamad Bayi, and neither of those individuals have any management duties or authority for Nouria Energy or "answer" to Nouria Energy. See CSMF ¶ 69, 85, 138. Finally, the companies have independent directors: Ziad El-Nemr is the sole director of T.N.Z. and Tony El-Nemr is the sole director of Nouria Energy. See CSMF ¶¶ 66, 74, 79. Moreover, Ziad El-Nemr is not involved in running Nouria Energy, and Tony El-Nemr is not involved in running T.N.Z. See CSMF ¶¶ 71, 85. Accordingly, Nouria Energy and T.N.Z. have no common management.

### (2)     There Is No Interrelation Between Operations.

In evaluating the second factor, the First Circuit analyzes whether the companies have separate (a) headquarters; (b) human resources departments; (c) records and record keeping; and (d) worksites, and whether (e) the nature of the businesses is distinct. See Engelhardt, 472 F.3d at 6.

In this case, Nouria Energy's operations are not interrelated with T.N.Z.; rather, the companies are independent. Specifically:

- Nouria Energy's principal office is located at 326 Clark Street, Worcester, Massachusetts while T.N.Z.'s only office is located at 310 Washington Street, Auburn, Massachusetts. See CSMF ¶¶ 68, 76, 80.

- Nouria Energy has a human resources department headed by Natalya Fater and Ann Army, while T.N.Z. does not have a human resources department. See CSMF ¶ 155. While Ann Army performed the payroll processing for T.N.Z., she did not provide any of T.N.Z.'s human resources functions. See CSMF ¶¶ 157-159, 162-170.

- Nouria Energy's records and recordkeeping are distinct from T.N.Z., as T.N.Z.'s records (other than electronic payroll records kept by Ann Army) are maintained by Ziad El-Nemr and kept at T.N.Z.'s headquarters. See CSMF ¶¶ 124-125.

- Nouria Energy and T.N.Z. have distinct worksites, since T.N.Z.'s sole worksite is located at 310 Washington Street, while Nouria Energy has a multitude of worksites across Rhode Island, Massachusetts, New Hampshire, and Maine. See CSMF ¶ 51, 81;

- Nouria Energy does not share a bank account with T.N.Z. See CSMF ¶ 131.

- Nouria Energy does not share landscape services, cleaning services, utility services, or maintenance services with T.N.Z. See CSMF ¶ 123.

- Nouria Energy is not covered by the same workers' compensation insurance policy as T.N.Z. See CSMF ¶¶ 119-121.

- The nature of the businesses are distinct. T.N.Z. is a gas station/convenience store. Meanwhile, Nouria Energy Corporation is a holding company and Nouria Energy Retail exists solely to pay the payroll for hourly employees that work in Nouria Energy Corporation's gas stations. See CSMF ¶ 77, 82.

Accordingly, there is no interrelation between the operations of Nouria Energy and T.N.Z.

### (3) There Is No Centralized Control of Labor Relations.

In evaluating the third factor, the First Circuit considers whether the smaller company makes its own, independent decisions with respect to labor relations. See Engelhardt, 472 F.3d at 7. Specifically, the First Circuit looks to whether the smaller company had the power to determine how many employees it needs, when and whom to hire and fire to meet those needs, and whether the smaller company deferred to the larger company in making hiring, firing, assigning, scheduling, or compensation decisions. Id.

Here, T.N.Z. – alone, acting through Ziad El-Nemr – has the power to determine how many employees it needs and when and whom to hire and fire, and, solely through Ziad El-Nemr and Abdessamad Bayi, has the power to make assignments, set schedules and make decisions regarding its employees' compensation. See CSMF ¶¶ 133-140. Nouria Energy has absolutely no input with respect to any of the T.N.Z.'s labor relations decisions. See CSMF ¶¶ 143-151.

Indeed, Plaintiff's own experience at T.N.Z. shows that Nouria Energy and T.N.Z. did not have a centralized control over labor relations. Specifically, Ziad El-Nemr interviewed and hired Plaintiff, Plaintiff was trained by Salah Bekri, Abdessamad Bay, and Mustafa Mahdi– all employees of T.N.Z. – Ziad El-Nemr and Abdessamad Bayi set Plaintiff's schedule, Ziad El-Nemr set Plaintiff's rate of pay, Plaintiff received his pay checks from Ziad El-Nemr, Ziad El-Nemr gave Plaintiff his uniform, Plaintiff addressed his questions regarding his schedule and job

duties to Ziad El-Nemr, and Plaintiff asked Ziad El-Nemr for authorization to take vacation. See CSMF ¶¶ 42-51. In addition, Plaintiff never spoke or met with Ann Army, Tony El-Nemr never gave Plaintiff directions about his job, no manager of Nouria Energy ever gave Plaintiff directions about his job, and Plaintiff did not work at any other gas station other than T.N.Z. See CSMF ¶¶ 52-55.

Defendants expect that Plaintiff will try to establish that Nouria Energy and T.N.Z. had a centralized control of labor because Plaintiff signed employment documents with Nouria Energy's logo, letterhead, and/or name and Nouria Energy processed T.N.Z.'s payroll. However, it is established in the First Circuit that the smaller company's use of the larger company's "employment documents, form and payroll services [does not] create an inference that [the larger company] centrally determined both companies' employment policies" if "there is no evidence that [the larger company] required [the smaller company] to adopt the same policies and programs, nor could [the larger company] prevent [the smaller company] from adopting different ones." Engelhardt, 472 F.3d at 6 (citing Hukill v. Auto Care, Inc., 192 F.3d 437, 444 (4th Cir. 1999). Rather, the smaller company's use of the larger company's "forms . . . and payroll services are reflective of [the smaller company's] desire to capitalize on certain economies of scale" and the First Circuit has established that "whether [the smaller company] obtains services at an arm's length from [the larger company], for which it would otherwise have to go to more expensive outside vendors, is irrelevant to the goal of imposing liability on affiliated corporations; moreover, it is antithetical to the purpose for excepting smaller businesses from liability to impose liability on the [larger company]." Engelhardt, 472 F.3d at 6 (finding that there was no interrelation between a parent and subsidiary company when the

subsidiary used the parent's forms,[1] employee benefits programs, and payroll services); see Papa

v. Katy Indus., Inc., 166 F.3d 937, 942 (7th Cir. 1999) ("A firm too small . . . will hire an

accounting firm to do its payroll rather than having its own payroll department . . . [this form of

integration will not] subject tiny employers to liability . . . Why should it make a difference if the

integration takes the form . . . so that the tiny employer gets . .. his payroll function from his

parent corporation without corporate formalities, rather than independent contractors?"); see also

Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 994 (6th Cir. 1997) (finding no

interrelation of operations where there were separate records, bank accounts, and offices);

Hukill, 192 F.3d at 443 (finding as insignificant the fact that subsidiary purchased administrative

services from parent as compared with evidence that each company otherwise operates

distinctly).

    While Nouria Energy Retail – through Ms. Army – *processed* payroll for T.N.Z., that fact

alone does not warrant a finding that the entities are integrated, since Ziad El-Nemr alone made

the decisions regarding T.N.Z.'s employees' compensation, T.N.Z. recorded and reported the

hours worked by its employees, T.N.Z. paid the wages to its employees, and T.N.Z. paid the

payroll companies for the administrative fees. See CSMF ¶¶ 135-136, 160. Moreover, the fact

that Plaintiff signed the various Nouria Forms is not dispositive because the use of such forms

was a mistake by Ziad El-Nemr, and Nouria Energy did not require T.N.Z. to use such forms and

did not prohibit T.N.Z. from changing such forms. See CSMF ¶ 56-59, 152-153. Accordingly,

---

[1]   In Englehart, the employee presented evidence that the separation notice she signed before her termination, the employee attendance policy forms, the code of corporate conduct form, the sexual harassment policy form, and the employee benefits packages, along with the accompanying brochures, information sheets, and election and acknowledgement forms were on the parent's letterhead or stamped with the parent's logo and that one letter even addressed the employee as "Dear [corporate parent] Employee." In addition, the employees' paychecks were processed through the parent and bore the parent's logo. 472 F.3d at 5. Despite those facts, the Court found that the parent and subsidiary were not interrelated employers. Moreover, Nouria Energy and T.N.Z. have even less connection than the entities in Englehart because Nouria Energy and T.N.Z. do not have a parent-subsidiary relationship.

the undisputed evidence weighs heavily in favor of finding that there is no centralized control of labor relations between Nouria Energy and T.N.Z.

Moreover, T.N.Z. and Nouria Energy are contractually prohibited from having a centralized control of labor relations. The Management Fee Station Lease provides that "[T.N.Z.] is an independent businessman with the exclusive right to direct and control its convenience store business and, where applicable, other business operations at the above premises. [Nouria Energy Corporation] reserves no control over said business(es) at the above Premises. [T.N.Z.] has no authority to employ anyone as an employee or agent of [Nouria Energy Corporation] for any purpose." See CSMF ¶ 100. In addition, the Management Fee Agreement provides that T.N.Z. and Nouria Energy Corporation "expressly agreed and stipulated that neither [T.N.Z.] nor the employees of [T.N.Z.] shall be deemed or construed to be employees of [Nouria Energy Corporation]." See CSMF ¶ 103.

*(4)    There Is No Common Ownership.*

Finally, there is no common ownership between Nouria Energy and T.N.Z. Ziad El-Nemr is the sole owner of T.N.Z. and neither Ziad El-Nemr nor T.N.Z. have any ownership interest in Nouria Energy. See CSMF ¶ 69, 84.

In sum, the record evidence demonstrates that T.N.Z. and Ziad El-Nemr are not a single employer with Nouria Energy under the "integrated employer" test. Therefore, liability under the FMLA with respect to Plaintiff does not extend to Nouria Energy Corporation and/or Nouria Energy Retail, and the Defendants are entitled to summary judgment in their favor as a matter of law on Plaintiff's claim of FMLA interference (Count I).

D.    **The Technical Regulations Do Not Apply To Defendants.**

Plaintiff's claims regarding technical violations of the FMLA regulations fail as a matter of law because such requirements do not apply to Defendants in this case. Specifically, Plaintiff

alleges that Defendants did not: (a) "post the required notice on their premises regarding FMLA leave;"[2] (b) "explain to Plaintiff his right to take leave pursuant to the FMLA;"[3] (c) "provide Plaintiff with written notice detailing his specific expectations and obligations under the FMLA, and explaining any consequences of a failure to meet those obligations;"[4] and (d) "provide Plaintiff with written designation of whether his absences qualified for FMLA leave."[5] See Complaint ¶¶ 108-11. Those technical FMLA regulatory requirements do not apply in this case because T.N.Z. and Ziad El-Nemr are not covered employers, Nouria Energy is not a single employer with T.N.Z. and Ziad El-Nemr, and Plaintiff was not an FMLA-eligible employee. See Department of Labor, *Fact Sheet #28D: Employer Notification Requirements under the Family and Medical Leave Act* (stating that "*covered* employers must display a general notice about the FMLA . . . [and] *covered* employers who have employees who are *eligible* for FMLA leave must" provide the general notice, eligibility notice, rights and responsibilities notice, and designation notice) (emphasis added). Accordingly, Plaintiff's claims of such alleged regulatory compliance violations must fail as a matter of law.

### E. Failure to Comply With Technical Regulations Is Not Actionable.

Moreover, even assuming that Defendants were required to provide FMLA notices (which they were not), failures to provide such notices are "not actionable unless they harm the employee." See Bellone v. Southwick-Tolland Reg. Sch. Dist., 748 F.3d 418, 423 (1st Cir. 2014). The key question is whether the employer's failure to provide notice rendered the plaintiff "unable to exercise [the right to FMLA leave] in a meaningful way, thereby causing

---

[2] Regarding this allegation, Plaintiff is apparently alluding to the technical "general notice" requirement found at 29 C.F.R. § 825.300(c).

[3] Regarding this allegation, Plaintiff is apparently alluding to the technical "eligibility notice" requirement found at 29 C.F.R. § 825.300(b).

[4] Regarding this allegation, Plaintiff is apparently alluding to the technical "rights and responsibilities notice" requirement found at 29 C.F.R. § 825.300(c).

[5] Regarding this allegation, Plaintiff is apparently alluding to the technical "designation notice" requirement found at 29 C.F.R. § 825.300(d).

injury." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004); see also Wallace v. FedEx Corp., 764 F.3d 571 (6th Cir. 2014) ("[A]n employee must demonstrate that an employer's failure to follow the FMLA and its regulations caused her harm."); Badwal v. Bd. of Trs. of Univ. of D.C., --- F.Supp.3d ----, 2015 WL 5692842, at *13 (D.C. Cir. Sept. 28, 2015) (explaining that an employer's failure to provide notice is not actionable unless the employee can demonstrate prejudice and that prejudice "occurs only when the employee has lost compensation or benefits by reason of the violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status remediable through equitable relief"). Plaintiff has not, and cannot, demonstrate that he suffered harm as a result of the lack of notices because, as set forth above, Plaintiff was not entitled to FMLA leave and, therefore, could not have exercised FMLA rights even if he had been provided such notices.

Accordingly, Defendants are entitled to summary judgment as a matter of law on Plaintiff's FMLA interference claim (Count I) because Plaintiff cannot make a *prima facie* case since (1) he was not a covered employee; (2) T.N.Z. and Ziad El-Nemr are not covered employers; (3) Nouria Energy is not a single employer with T.N.Z. and Ziad El-Nemr; and (4) the alleged violations of the technical regulations are not actionable.

### III.    Plaintiff Cannot Establish A Prima Facie Case of FMLA Retaliation.

It is well-established that to establish a *prima facie* case for FMLA retaliation, the Plaintiff must demonstrate that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA, or the adverse decision was made because he sought protection under the FMLA. Surprise, 925 F.Supp.2d 134.

Plaintiff claims that he was "terminated or not restored to his position as a result of taking or attempting to take covered leave." See Complaint ¶ 117. Even assuming for the purposes of

summary judgment that Plaintiff was terminated, Plaintiff's claim fails as a matter of law because – as set forth in Section II above – Plaintiff was not entitled to FMLA leave and, therefore, was not availing himself of a right protected under the FMLA. Specifically, under well-established law in the First Circuit, since Plaintiff was not FMLA-eligible, his leave was not a "right protected under the FMLA," and, therefore, he cannot satisfy the first prong of a *prima facie* case of retaliation. See <u>McArdle v. Town of Dracut</u>, 732 F.3d 29, 25 (1st Cir. 2013) (stating that the plaintiff could not successfully argue that he was fired in retaliation for taking FMLA leave because "in his case, taking leave was not a right protected under the FMLA" since he was not eligible for FMLA leave).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of FMLA retaliation (Count I).

## IV. Plaintiff Cannot Establish Claims Under The ADA Or M.G.L. c. 151B.

In Counts II, III, IV and V, of the Complaint, Plaintiff claims that Defendants discriminated against him in violation of the ADA and M.G.L. c. 151B "because of his association with a person with a disability and/or handicap." In addition, Plaintiff claims that Defendants retaliated against him in violation of the ADA and M.G.L. c. 151B because Plaintiff "assert[ed] his rights under" the ADA and M.G.L. c. 151B. As set forth below, Plaintiff is barred from bringing claims under the ADA and M.G.L. c. 151B against Nouria Energy Retail because Plaintiff did not comply with his administrative filing prerequisite for bringing such claims against that company. In addition, Plaintiff's claims of ADA discrimination and retaliation fail as a matter of law because T.N.Z. and Ziad El-Nemr are not "employers" under the ADA since they do not meet the 15-employee threshold, and because Nouria Energy is not a single employer with T.N.Z. and Ziad El-Nemr. Moreover, Plaintiff's claim of discrimination fails because Plaintiff has not, and cannot, claim or provide evidence that he was discharged

because of Defendants' beliefs regarding his wife's alleged disability. Finally, Plaintiff's claim of retaliation fails because Plaintiff has not, and cannot, claim or provide evidence that he engaged in any protected conduct or that there was a causal relationship between such protected conduct and an adverse employment action.

### A. Plaintiff Did Not Exhaust Administrative Remedies Against Nouria Energy Retail.

It is well-established that "a person or party not named in an EEOC charge is not subject to suit." Gonzalez v. Ritz Carlton Hotel Co. of P.R., 241 F.Supp.2d 142, 145 (D.P.R. 2003) (citing Adorno-Rosado v. Wackenhut P.R., Inc., 98 F.Supp.2d 181 (D.P.R. 2000). Likewise, civil suits are prohibited against parties not named as respondents in the charge before the MCAD. See e.g., Hayes v. Henri Bendel, Inc., 945 F.Supp. 374, 278-79 (D. Mass. 1996). Accordingly, a Plaintiff has failed to exhaust administrative remedies against an entity if the Plaintiff did not name that entity in an EEOC/MCAD charge as a party responsible for the alleged acts of discrimination or retaliation against him. See Gonzalez, 241 F.Supp. at 145. Importantly, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigations . . . strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Id. (quoting Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)).

Plaintiff did not name Nouria Energy Retail as a respondent in his MCAD/EEOC Charge. See CSMF ¶ 63. Therefore, as a matter of law, Plaintiff failed to exhaust his administrative remedies against Nouria Energy Retail and is prohibited from bringing claims of discrimination and retaliation under the ADA and M.G.L. c. 151B against Nouria Energy Retail in this Court.

### B. T.N.Z. Does Not Meet The ADA's 15-Employee Threshold.

The ADA provides that no employer "shall discriminate on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 1211(a). An "employer" under the ADA is defined in relevant part as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." Id. § 12111(5)(A). T.N.Z. and Ziad El-Nemr have never had 15 or more employees. See CSMF ¶ 73. Therefore, T.N.Z. and Ziad El-Nemr are not covered employers under the ADA and are entitled to summary judgment on Plaintiff's claims thereunder.

### C. Nouria Energy Corporation and Nouria Energy Retail Are Not Plaintiff's Employers Under The ADA.

Nouria Energy was never an employer of Plaintiff. The "single employer" or "integrated enterprise" doctrine applies to determine liability under the ADA. See Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 43 (1st Cir. 2007) (citing Swallows, 128 F.3d at 993 ("Under the 'single employer' or 'integrated enterprise' doctrine, two companies may be considered so interrelated that they constitute a single employer subject to liability under the ADEA and/or the ADA.")).[6] Thus, for the same reasons articulated above, Nouria Energy and T.N.Z. are not integrated employers and, therefore, they are not subject to liability for Plaintiff's ADA claims. Accordingly, Nouria Energy is entitled to summary judgment as a matter of law on Plaintiff's claims of associational discrimination and retaliation under the ADA.

### D. Plaintiff Cannot Establish a Prima Facie Case of Associational Discrimination Under the ADA or M.G.L. c. 151B.

---

[6]  In Swallows, the Court explained that under the "single employer" or "integrated enterprise" doctrine, Courts examine four factors: "interrelation of operations, i.e. common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and board; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." 128 F.3d at 993-94.

Even assuming *arguendo* that Nouria Energy, T.N.Z. and/or Ziad El-Nemr are Plaintiff's

employers under the ADA, Plaintiff still cannot establish a *prima facie* case of associational

disability discrimination. Section 12112(b)(4) of the ADA – known as the "association

provision" – defines "discriminate" as "excluding or otherwise denying equal jobs or benefits to

a qualified individual because of the known disability of an individual with whom the qualified

individual is known to have a relationship or association."

M.G.L. c. 151B, § 4(16) provides that an employer may not "dismiss from employment

or . . . otherwise discriminate against, because of his handicap, any person alleging to be a

qualified handicap person, capable of performing the essential functions of the position involved

with reasonable accommodation. In Flagg v. AliMed, Inc., the Massachusetts Supreme Judicial

Court concluded that § 4(16) encapsulated associational discrimination and explained:

> When an employer subjects an otherwise satisfactory employee to
> adverse employment decisions premised on hostility toward the
> handicapped condition of the employee's spouse, it is treating the
> employee as if he were handicapped himself – that is, predicated
> on discriminatory animus, the employer treats the spouse's
> handicap as a characteristic bearing on the employee's fitness for
> his job. The employee is thereby subjected to the type of
> prejudice, stereotypes, or unfounded fear relating to handicapped
> individuals that [the statute] seeks to protect against.

466 Mass. 23, 30 (2013) (internal quotations omitted); see also id. at 42 (Gants, J. concurring)

("The Court's findings of a cognizable claim here is based solely on the allegation that he was

fired because the employer feared the medical expenses his spouse was likely to incur because of

her handicap.").

To state a *prima facie* case of associational discrimination under the ADA, Plaintiff must

show that (1) he was qualified for the job at the time of the adverse employment action; (2) he

was subjected to adverse employment action; (3) he was known by his employer at the time to

have a relative or associate with a disability; and (4) the adverse employment action occurred

under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. See Sifre v. Dep't of Health, 38 F.Supp.2d 91, 100 (D.P.R. 1999). While the elements of associational discrimination under M.G.L. c. 151, § 4(16) are not clear, the Massachusetts courts do require an employee to show that "he was fired *because of* his association with" a handicapped person, which is substantially similar to the ADA's fourth prong. Lashgari v. Zoll Med., 84 Mass.App.Ct. 1106, *2 (2013) (1:28 Decision) (emphasis added). Defendants are entitled to summary judgment because Plaintiff has not, and cannot, adequately plead or claim that he was terminated *because of* his association with his wife or, stated differently, that his wife's handicap was a determining factor in Defendant's decision.

Specifically, with respect to the fourth prong of a *prima facie* case of associational discrimination, courts have "found that to state a claim of association discrimination, a plaintiff must show that his or her employer took adverse action because of stereotypes or unfounded beliefs regarding the associate's disability." Sifre, 38 F.Supp.2d at 101. While the Complaint is vague as to Plaintiff's claim for associational disability discrimination, his MCAD/EEOC Charge alleges that he was "terminated . . . because of discriminatory animus directed toward me as a result of my association with my wife and [Defendants] desire to be free from their obligations under the law, including but not limited to its obligation to provide me with time off under the Family Medical Leave Act." See CSMF ¶ 64. However, Plaintiff has not, and cannot, provide any evidence that Defendants held any unfounded or stereotypical beliefs regarding Plaintiff's wife or that he was terminated because of those beliefs. Rather, the evidence shows that Plaintiff's wife has been handicapped for as long as Plaintiff has worked at T.N.Z. and that Plaintiff was hired by T.N.Z. on two separate occasions. See CSMF ¶¶ 1, 12. In addition, it is undisputed that Ziad El-Nemr told Plaintiff to take as much time off as he needed after the birth

of his child, and Ziad El-Nemr only considered that Plaintiff's employment with T.N.Z. had ended once Plaintiff filed for unemployment compensation. See CSMF ¶¶ 29, 39. Plaintiff has not shown, and cannot show, that, suddenly, Ziad El-Nemr harbored unfounded beliefs about Plaintiff's wife's handicap only after she gave birth to their son and then acted on those beliefs. Indeed, at his deposition, Plaintiff could only say that "**maybe**" Ziad El-Nemr "had something against [Plaintiff] because [his] wife had a medical condition," because Plaintiff had to leave work after his shift was over to "take [his wife] to the doctor" and he thought that Ziad "doesn't like that **probably**." See CSMF ¶¶ 21-23. (emphasis added). Such conjecture is not sufficient to state a claim of associational disability discrimination. Therefore, as a matter of law, Defendants are entitled to summary judgment on Plaintiff's claims of associational discrimination under the ADA and M.G.L. c. 151B, § 4(16). See Sifre, 38 F.Supp.2d at 101; Barker v. Int'l Paper Co., 993 F.Supp. 10, 15 (D. Me. 1998).[7]

### E.     **Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under The ADA or M.G.L. c. 151B.**

Again, even assuming *arguendo* that Nouria Energy, T.N.Z. and/or Ziad El-Nemr are covered by the ADA, Plaintiff can nevertheless still not establish a *prima facie* claim of retaliation under the ADA or M.G.L. c. 151B. The ADA prohibits employers from taking adverse action against an individual "because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation under the ADA and M.G.L. c. 151B, Plaintiff must establish that (1) he engaged in protected conduct; (2) suffered some adverse employment action; and (3) there was a causal

---

[7]     In addition, Plaintiff's claim does not fit within any of the three Larimer categories of associational discrimination claims, which are: "(1) refusal to hire when the employer makes an unfounded assumption that the employee will miss work in order to care for a disabled relative; (2) discharging an employee who does volunteer work with AIDS victims, due to fear that the employee may contract the disease; and (3) denying health benefits to a disabled dependent of an employee but not to other dependents, even where the provision of benefits to the disabled dependent would result in increased health insurance costs of the employer." See Oliveras-Sifre, 214 F.3d at 26 (stating that association claims must "fit within this framework").

connection between the protected conduct and the adverse employment action. See Oliveras-Sifre v. P.R. Dep't of Health, 214 F.3d 23, 26 (2000); Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011).

Even assuming *arguendo* that Plaintiff was discharged or suffered some adverse employment action, Plaintiff nevertheless cannot establish a *prima facie* case of retaliation because Plaintiff has not demonstrated that he engaged in any protected conduct, and it is not the Court's role "to conjecture whether an actionable claim lurks beneath [his] sketchy allegations." Oliveras-Sifre, 214 F.3d at 27. Specifically, Plaintiff made a threadbare claim that he "assert[ed] his rights under Title I of the ADA" and "G.L. c. 151B," but he completely failed to plead any facts to support that conclusory statement or otherwise show that he engaged in conduct protected by the ADA or M.G.L. c. 151B. See Complaint ¶¶ 134, 137.

Moreover, Plaintiff cannot establish a *prima facie* case of retaliation because he cannot show a causal link between his alleged protected activities and the alleged adverse employment action. Causation can be shown either through direct evidence or very close temporal proximity between an employer's knowledge of the protected activity and the adverse employment action. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 5, 25 (1st Cir. 2004). However, even assuming temporal proximity between a protected activity and an adverse employment action, in order to draw the inference of a causal link, "the adverse action must have been taken for the *purpose* of retaliating." Carmona-Rivera, 464 F.3d at 20. Once again, Plaintiff's retaliation claim fails because he has not shown that he engaged in any protected activity, let alone a protected activity which could have a causal link to any allegedly adverse employment action. Moreover, Plaintiff has provided no evidence of a retaliatory intent associated with any adverse employment action.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims of (1) discrimination in violation of the ADA (Count III) and M.G.L. c. 151B (Count II); and (2) retaliation in violation of the ADA (Count V) and M.G.L c. 151B (Count IV).

## V. Plaintiff Does Not Have A Right Of Action Under M.G.L. c. 149.

It is well-established that M.G.L. c. 149, § 100, which requires that employers provide employees who work six hours or more with a thirty-minute meal period, "does not create a private right of action." See Salvas v. Wal-Mart Stores, Inc., 452 Mass. 333, 372-73 (2008);[8] Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 56 (1st Cir. 2013) (stating that M.G.L. c. 149, § 100 does "not provide for either an express or implied private right of action"). Accordingly, Plaintiff's claim of violation of M.G.L. c. 149, § 100 (Count VI) should be dismissed in favor of all Defendants as a matter of law.

## VI. Plaintiff Cannot Establish A Claim Under M.G.L. c. 149, § 148.

The Massachusetts Wage Act, M.G.L. c. 149, § 148, provides that "[a]ny employee discharged from . . . employment shall be paid in full on the date of his discharge . . . The word "wages" shall include any holiday or vacation payments due to an employee under an oral or written agreement." The Massachusetts Supreme Judicial Court has established that, with respect to vacation pay, employers must pay unused, earned vacation time to employees upon discharge. See Dixon v. City of Malden, 464 Mass. 446, 450 (2013).

Plaintiff's claim fails as a matter of law because he was not due any wages for *unused, earned* vacation time at the time of his separation from T.N.Z. Pursuant to T.N.Z.'s vacation policy (which is unwritten), employees are eligible for one week of paid vacation per year after they have worked for T.N.Z. for one year. See CSMF ¶ 15. Plaintiff admits that he took one

---

[8] Unlike the plaintiffs in Salvas, Plaintiff has not alleged that T.N.Z. (or any of the Defendants) had a contractual duty to provide him with meal breaks under M.G.L. c. 149, § 100. See Complaint ¶¶ 149-52.

week of paid vacation in October 2012. See CSMF ¶ 20. Accordingly, Plaintiff had no *unused*, *earned* vacation time at the time of his separation from T.N.Z.[9] Therefore, Plaintiff's claim for violation of M.G.L. c. 149, §148 for failure to pay vacation pay (Count VII) should be dismissed in favor of all Defendants as a matter of law.[10]

## VII. There Is No Cause Of Action For Vacation Pay Under the Federal Minimum Wage Law.

Plaintiff claims that Defendants failed to pay him for "earned vacation pay" in violation of 29 U.S.C. § 206, the federal Equal Pay Act. The Equal Pay Act contains no provision regarding the earning or payment of vacation pay. See 29 U.S.C. § 206. Accordingly, Plaintiff has no cause of action under 29 U.S.C. § 206, and, therefore, his claim of a violation thereof (Count VIII) should be dismissed in favor of all Defendants as a matter of law.

## VIII. Plaintiff's Breach Of Contract Claim Fails As A Matter Of Law.

The essential elements of a breach contract claim under Massachusetts law are (1) an agreement, express or implied, in writing or oral; (2) for a valid consideration; (3) performance or its equivalent by the plaintiff and breach by the defendant; and (4) damage to the plaintiff. See e.g., Mass. Cash Register, Inc. v. Comtrex Sys. Corp., 901 F.Supp. 404, 415 (D. Mass. 1995). With respect to the first element, to form a contract in Massachusetts, there must be "offer, acceptance, and an exchange of consideration or meeting of minds." Aragao v. Mortg. Elec. Registration Sys., Inc., 22 F.Supp.3d 133, 139 (D. Mass. 2014) (citing Northrup v. Brigham, 63 Mass.App.Ct. 362, 367 (2005)).

At the outset, Plaintiff has failed to state a breach of contract claim against Nouria Energy because he has not alleged that any agent of Nouria Energy entered into any contract with him.

---

[9]   To the extent Plaintiff is also claiming that T.N.Z. failed to pay vacation pay to Plaintiff during his employment, such claim also fails as a matter of law for the reasons set forth herein.

[10]   Moreover, the Right to Sue letter from the Attorney General only authorizes suit against T.N.Z. See CSMF, Ex. S. Therefore, that claim should be dismissed in favor of Nouria Energy Corporation and Nouria Energy Retail.

For that reason alone, Nouria Energy Corporation and Nouria Energy Retail are entitled to summary judgment on Plaintiff's breach of contract claim.

Moreover, Plaintiff cannot make a *prima facie* claim of breach of contract against T.N.Z. and/or Ziad El-Nemr because there was never an enforceable agreement between Plaintiff and T.N.Z. and/or Ziad El-Nemr. "It is an axiom of modern contract law that the formation of a contract requires the 'manifestation of mutual assent' by the parties to the agreement." Bourque v. F.D.I.C., 42 F.3d 704, 708 (1st Cir. 1994). At his deposition, Plaintiff claimed that – in July or August 2009 – Ziad El-Nemr offered him "a raise" and "fifty dollars for gas" if Plaintiff returned to work for T.N.Z. See CSMF ¶ 5. Plaintiff did not accept the offer and, instead, began working for Cumberland Farms.[11] See CSMF ¶ 7. Since Plaintiff rejected that alleged offer, he terminated his power of acceptance of the offer and, thereafter, "the offer cannot be accepted and no contractual obligation can result." Williston on Contracts § 5.2; see also Peretz v. Watson, 3 Mass.App.Ct. 727 (1975) ("[A]n offer once rejected cannot thereafter be revived by an attempted acceptance thereof"). Therefore, as a matter of law, Plaintiff's claim of breach of contract fails.

Moreover, even assuming Plaintiff somehow revived the alleged offer in August 2010 after rejecting it in July or August 2009, there was no enforceable contract because there was no meeting of the minds between Plaintiff and Ziad El-Nemr as to the essential elements of the purported agreement. As set forth above, under Massachusetts law, there must be a meeting of the minds "as to the essential elements before there can be a contract. No vital factors of it can be left to a future negotiation." Jamestown Portland Cement Corp. v. Bowles, 228 Mass. 176, 180-81 (1917). At his deposition, Plaintiff testified that Ziad El-Nemr allegedly offered him a

---

[11] Plaintiff testified that he did not have any conversations with Ziad El-Nemr regarding his rate of pay when he returned to T.N.Z. in August 2010 (which was at least one year after Plaintiff's rejection of Ziad El-Nemr's alleged offer).

"raise," but did not offer a specific dollar amount for such "raise."[12]  See CSMF ¶ 6.  Certainly, the amount of the "raise" is an essential element of the alleged contract, and the fact that such crucial figure was not agreed upon by Plaintiff and Ziad El-Nemr demonstrates that there was no meeting of the minds and, therefore, no enforceable contract.

Finally, Plaintiff's attempt to bring a claim for non-payment of wages as a "breach of contract claim" should be rejected as an attempt to circumvent the administrative remedies exhaustion requirements of M.G.L. c. 149, § 150, which Plaintiff has failed to satisfy. Specifically, Plaintiff's Non-Payment of Wage and Workplace Complaint Form (the "Complaint Form") submitted to the Attorney General only alleges violations of "vacation pay" and "meal period."  See CSMF ¶ 61.  The Complaint Form does not allege a "non-payment of wages" violation.  See CSMF ¶ 61.  Therefore, Plaintiff did not receive authorization from the Attorney General required under M.G.L. c. 149, § 150 to sue T.N.Z. for non-payment of wages, but is nonetheless attempting to do so by fashioning the claim as a "breach of contract."  Plaintiff's claim in that regard is an obvious attempt to circumvent the Massachusetts legislature's clear requirements.

Accordingly, Defendants should be granted summary judgment in their favor on Plaintiff's breach of contract claim (Count IX).

### IX.  Plaintiff's Promissory Estoppel Claim Fails As A Matter Of Law.

Under Massachusetts law, to succeed on a claim for promissory estoppel, a plaintiff must prove that (1) a promisor made a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise; (2) the promise does induce such action or forbearance; and (3) injustice can only be avoided by the enforcement

---

[12]  Since Plaintiff and Ziad El-Nemr did not agree upon Plaintiff's hourly wage, it is impossible for Plaintiff to argue that there has been a breach of the contract because the agreed-upon wage must be established in order to evaluate whether or not T.N.Z. paid Plaintiff the agreed-upon wage.

of the promise. See e.g., MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486 (1st Cir. 2013). "An essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation." Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 849-50 (1995). "Courts typically invoke the doctrine of promissory estoppel when the formal requirements of contract formation are absent and when enforcing the promise would serve the interests of justice." Steinke v. Sunguard Fin. Sys., Inc., 121 F.3d 763, 776 (1st Cir. 1997).

Plaintiff has failed to state a promissory estoppel claim against Nouria Energy because he has not alleged that any agent of Nouria Energy made a promise to him. Accordingly, Nouria Energy Corporation and Nouria Energy Retail are entitled to summary judgment on Plaintiff's promissory estoppel claim.

Plaintiff cannot establish a *prima facie* case of promissory estoppel against Ziad El-Nemr and/or T.N.Z. because Ziad El-Nemr's alleged promise is ambiguous. To form the basis of a promissory estoppel claim, the alleged promise "must be sufficiently definite and certain in its terms." Dixon v. Wells Fargo Bank, N.A., 798 F.Supp.2d 336, 341 (D. Mass. 2011). Plaintiff only relies on the one alleged "promise" by Ziad El-Nemr for a "raise" and "fifty dollars for gas." See CSMF ¶ 5. Plaintiff admitted at his deposition that Ziad El-Nemr did not promise him a specific dollar amount for the "raise" he allegedly promised. See CSMF ¶ 6. Accordingly, such alleged promise is not sufficiently definite and certain in its terms and, therefore, Plaintiff's promissory estoppel claim fails as a matter of law.

Even assuming the alleged promise was unambiguous, Plaintiff's promissory estoppel claim fails as a matter of law because Plaintiff did not reasonably rely on the alleged promise. "[I]f on the facts alleged, no reasonable jury could find that the plaintiff's reliance was

reasonable, the defendants are entitled to judgment as a matter of law." <u>Grant v. John Hancock</u>

<u>Mut. Life Ins. Co.</u>, 183 F.Supp.2d 344, 370 (D. Mass. 2002) (citing <u>Mass. Laborers' Health &</u>

<u>Welfare Fund v. Phillip Morris, Inc.</u>, 62 F.Supp.2d 236, 242 (D. Mass. 1999)). As set forth

above, Plaintiff only claims that Ziad El-Nemr promised him a "raise" and "fifty dollars for gas"

if Plaintiff returned to work for T.N.Z in July or August of 2009. <u>See</u> CSMF ¶ 5. Further,

Plaintiff admits that he <u>rejected</u> – and, thereby, clearly did <u>not</u> rely on – the offer. <u>See</u> CSMF ¶

7. Therefore, Plaintiff did not, in fact, rely on Ziad El-Nemr's promise, because Plaintiff rejected

the offer. In addition, even assuming that Plaintiff did rely on the promise, such alleged reliance,

which would have occurred at least one year after he rejected the offer, could not be reasonable.

Accordingly, Defendants are entitled to summary judgment in their favor on Plaintiff's

promissory estoppel claim (Count X).

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants, Nouria Energy Corporation,

Nouria Energy Retail, Inc., T.N.Z., Inc., and Ziad El-Nemr respectfully request that this Court

grant summary judgment in their favor on all of Plaintiff Ibrahim Knidel's claims and dismiss his

Complaint, with prejudice, in its entirety.

**T.N.Z., INC., ZIAD EL-NEMR, NOURIA ENERGY CORPORATION, and NOURIA ENERGY RETAIL, INC.,**

By their attorneys,


/s/ Amanda Marie Baer
Jonathan R. Sigel, BBO # 559850
Amanda Marie Baer, BBO # 681386
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.860.1474
Fax:    508.983.6261

Dated: January 8, 2016

## CERTIFICATE OF SERVICE

I, Amanda Marie Baer, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Amanda Marie Baer
Amanda Marie Baer

Dated: January 8, 2016